No. 120,306

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

CYNTHIA FLORES PERALES,
*Appellee*,

and

GARY FLORES PERALES,
*Appellant*.

SYLLABUS BY THE COURT

1.

The division of property in a divorce must be equitable but need not be equal.

2.

An appellate court reviews the division of property in a divorce for abuse of discretion, so the award may be reversed only if it depends on an error of fact or law or if no reasonable person would agree with it.

3.

On the facts of this case, the district court did not abuse its discretion in awarding virtually all of the marital property to one spouse.

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Opinion filed March 27, 2020. Affirmed.

*Stephen L. Brave*, of Brave Law Firm, LLC, of Wichita, for appellant.

No appearance by appellee.

Before BRUNS, P.J., LEBEN, J., and BURGESS, S.J.

LEBEN, J.: Gary Perales appeals the district court's decision to award to his wife essentially all the assets they had. He argues that this wasn't fair and that it violated a statute that allows the court to award property to one spouse while ordering the other "to pay a just and proper sum" for it. But another part of the statute lets the court simply divide the property "in kind," so an offsetting payment isn't required by statute. And the court need not divide assets equally; its duty is to divide them equitably.

Gary is serving a prison sentence of life plus 322 months—by any measure, a long time. At the time of the divorce, his wife, Cynthia, was supporting herself and the parties' four children. They were living in the home the court set aside to Cynthia, and Cynthia provided for them with a $23,000 annual income working at a fast-food restaurant and food stamps. With four children (two teenagers), Cynthia and her children no doubt also made good use of the Dodge pickup truck the court awarded to her.

Gary made no showing to the district court that he had any need for the house or the truck—or even for some monetary award instead of a property award. The court recognized that it had the duty to make an equitable ruling and cited facts that are significant given the factors the court must consider. We find no abuse of discretion in the court's award and affirm its judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Gary and Cynthia got married in March 1999; Cynthia filed for divorce in July 2017. They had four children during the marriage. When Cynthia filed for divorce, Gary was 58 and Cynthia was 38.

2

Kansas court rules require that parties to a divorce file an affidavit with the court setting out their income and assets. Cynthia's affidavit said that she had only $200 in her checking account and that she earned $23,055 per year working at a fast-food restaurant in Salina. She said she also received $237 per month in food stamps.

Gary didn't file an affidavit with the court. We know, though, that Gary is in a Kansas prison. He was convicted in 2012 of three counts of rape, four counts of aggravated indecent liberties with a child, and two counts of criminal sodomy. Gary's crimes were committed against a young girl, related to Cynthia, who lived with the parties for a time. Gary was sentenced to life in prison plus 322 months. *State v. Perales*, No. 110,246, 2015 WL 6630443, at *1 (Kan. App. 2015) (unpublished opinion).

The court held a short trial in which both parties testified, Cynthia in person and Gary by telephone. There's no evidence that Gary has either income or expenses. Instead, both parties' testimony related mainly to the house Cynthia and her children lived in and a 2007 Dodge pickup truck.

Cynthia said that she had paid most of the money for the house. Cynthia said that Gary had paid $10,000 toward the house before Cynthia received some insurance proceeds that let her pay the remaining $60,000 that was owed. (The insurance proceeds were initially received by Cynthia's mother after Cynthia's sister was murdered.) Cynthia testified that Gary had signed a quitclaim deed conveying all interest in the house to her before he went to prison. Cynthia estimated the house's current value at $110,000.

Gary testified that the money used to buy the house had come from his brothers, so they had an interest in the house. He also testified that he had sold the house and the pickup truck to his sister to fund his legal defense in the criminal case. Gary said that Cynthia had forged his signature on the quitclaim deed. He provided copies of what he claimed were receipts from his sale of the house and truck to his sister.

3

Cynthia said that she needed the pickup to transport herself and the children. She said that Gary had made payments on the pickup before he went to prison, but that she had paid the remaining $7,000 due after that. Both parties said that the purchase price had been $30,000; Cynthia estimated the pickup's current value as $19,775.

The court ruled orally at the end of the short trial. It found that the signature on the quitclaim deed matched his signature on court documents and appeared to be Gary's. The court also noted that no one other than Gary had testified about the arrangements between Gary and his family members.

The court said that its job was to "decide what is fair, just and equitable, in the division of the marital property." The court awarded both the truck and the house to Cynthia. The court said that "the fair, just and equitable division . . . regarding the truck" was to "set [it] over to [Cynthia]." The court noted her testimony that she had made payments after Gary went to prison.

As for the house, the court said that "[b]ased on the length of the marriage and the [quitclaim] deed, again that is notarized and signed by [Gary], . . . the [c]ourt is going to set the house over to her as her property . . . ." The court noted "the need to have a home for the parties' children."

ANALYSIS

Gary argues that the district court made two legal errors. First, he contends that the court treated the parties' house as if it weren't marital property at all. Second, he contends that if the court treats the house and pickup truck as marital property and awards them to Cynthia, it must require that she pay some amount to Gary to reflect his interest in the property.

4

On the first point, Gary is right that Kansas law treats all property owned by either party—even if titled solely in one party's name—as marital property subject to division by the court when a divorce is filed. See K.S.A. 2019 Supp. 23-2801. So the house was subject to equitable division by the court to either party even though Gary had signed a quitclaim deed giving full title to Cynthia.

But we see no indication that the district court misunderstood that basic concept of Kansas divorce law. Gary emphasizes that the court noted the quitclaim deed Gary had signed and even noted that the deed had been filed with the local register of deeds. Gary argues that had no relevance other than to support an award to Cynthia on the basis that the house wasn't marital property.

That's not our understanding of what the district court did. The court's statements about the house tracked several factors the court must consider under Kansas law.

A statute, K.S.A. 2019 Supp. 23-2802(c), sets out a nonexclusive list of factors the court must consider. The court's statements match up with factors listed there:

- The court mentioned the quitclaim deed, and the statute requires that the court consider the "property owned by the parties" and "time, source and manner of acquisition of property." K.S.A. 2019 Supp. 23-2802(c)(3), (5). Part of property ownership is the legal interest—do they have full legal title to the property? Just a lease? Cynthia had full legal title to the property through the quitclaim deed, and she had received that when Gary knew he was headed to prison for a long time. The form of ownership (full title) and the timing (put solely in Cynthia's name as Gary was headed to prison) supported awarding the house to Cynthia.
- The court mentioned the need for Cynthia to have a home for the parties' children, and the statute requires that the court consider "family ties and

5

obligations." K.S.A. 2019 Supp. 23-2802(c)(6). Making sure the children had a place to live supported awarding the house to Cynthia.

- The court also noted the length of the marriage (18 years), and the statute requires that the court consider "the duration of the marriage." K.S.A. 2019 Supp. 23-2802(c)(2). This doesn't seem as strong a factor in the award of the house as the others, but it shows that the court was considering the statutory factors, not simply awarding the house to Cynthia on the theory that it wasn't subject to equitable division in the divorce.

In sum, the court considered the required statutory factors when it awarded the house to Cynthia. It did not make the legal error Gary alleges in simply awarding the house to Cynthia based solely on her sole-owner status through the quitclaim deed; we find Gary's first argument of error unpersuasive.

Gary's second argument is that the district court failed to follow a different statutory requirement. He notes that another part of the statute we've been discussing authorizes "awarding the property or part of the property to one of the spouses and requiring the other to pay a just and proper sum." K.S.A. 2019 Supp. 23-2802(a)(2). Gary says that the court awarded the house and pickup to Cynthia but didn't order her "to pay a just and proper sum" to him in return.

Gary recognizes longstanding Kansas law that the division need only be equitable, not equal. See *In re Marriage of Rodriguez*, 266 Kan. 347, 352-53, 969 P.2d 880 (1998); *In re Marriage of Peffly*, No. 118,736, 2019 WL 2399474, at *5 (Kan. App. 2019) (unpublished opinion). But he argues that the court had to require Cynthia to pay him *something* in return for setting aside these assets to her.

We disagree for two reasons. First, in some cases—including this one—a "just and proper sum" may be zero. Second, another part of the statute allows the court to divide

6

the property "in kind." K.S.A. 2019 Supp. 23-2802(a)(1). And that in-kind provision, which also authorizes setting items of property aside to one spouse or the other, has no requirement that payment be made to the other party.

Let's first look at subsection (a)(2), which authorizes "awarding the property or part of the property to one of the spouses and requiring the other to pay a just and proper sum." We'll start with the word "sum." A sum is "an indefinite or specified amount of money." Merriam-Webster's Collegiate Dictionary 1250 (11th ed. 2014). Sums can be positive, negative, or zero. But how is the word "sum" used here? It's in the phrase: "a just and proper sum."

So we know that whatever that sum is to be in a given case, it should be the just and proper amount based on the facts of that case. In some cases, including this one, the just and proper amount may be zero.

The Legislature has told us what a court must consider to get to a just and proper sum. That's where the factors from K.S.A. 2019 Supp. 23-2802(c) come into play. They don't suggest that the just and proper sum cannot be zero, and consideration of listed factors like "family ties and obligations" and "dissipation of assets" could easily lead to an unequal property division:

> "(c) In making the division of property the court shall consider: (1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to make a just and reasonable division of property." K.S.A. 2019 Supp. 23-2802(c).

In fact, one of the listed factors—dissipation of assets—suggests an unequal division; if one party has frittered away the marital assets without benefit to the family, why not give most or all of the remaining assets to the other party?

That's what the trial court did in *Rodriguez*. In that case, the husband had been involved in illegal activities that led to the loss of $56,000 in marital assets to asset forfeitures and payments to his criminal-defense attorneys. The trial court noted that these assets "'were squandered as a result of his activities,'" 266 Kan. at 348, and awarded almost all of the remaining assets to the wife. She got the parties' house valued at more than $90,000 (though with some mortgage debt) and the value of her retirement plan; he got only his clothes, his billfold (with driver's license and social security card), and a "Cancun vacation membership" that had been bought for $3,200. 266 Kan. at 349. And that Cancun vacation account would have been of little immediate value to the husband, who was serving a 56-month prison sentence. But the Kansas Supreme Court noted that the trial court had considered all the required statutory factors and found no abuse of discretion in the property division. 266 Kan. at 354.

In our case, as we've already noted, the district court mentioned facts related to several of the factors when it awarded the house and pickup to Cynthia. We've also noted that longstanding Kansas caselaw says that the property division need only be equitable, not equal. *Rodriguez*, 266 Kan. at 352-53. In making that division, the trial court has great discretion—and unless the court has based its division on some incorrect factual assumption or faulty legal rule, we reverse its order dividing property only if it is based on an error of fact or law or if no reasonable person could agree with it. *In re Marriage of Sadecki*, 250 Kan. 5, 8, 825 P.2d 108 (1992); *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 261, 452 P.3d 392 (2019).

But can a division be reasonable when one spouse gets all the assets and the other gets nothing? In an extraordinary case, yes.

And this is such a case. Gary committed crimes so serious that he is now serving a prison sentence of life plus 322 months; he committed these crimes in the family's home. He has only a prison sentence—not family obligations—to fulfill. At the time of the divorce, Cynthia had very substantial family obligations; she supported herself and the parties' four children on a $23,000 annual income and food stamps. Gary had recognized Cynthia's need for the house by signing a quitclaim deed transferring record ownership to her before he was sentenced. And Gary had shown no need in the foreseeable future for the house, the pickup, or any substantial amounts of money. The court awarded Gary his personal effects but otherwise gave the parties' assets to Cynthia. We find no abuse of discretion; on these facts, zero was a just and proper sum to award Gary from the parties' assets of value.

We note that Gary's argument was that subsection (a)(2) requires the payment of some positive sum of money to one party if property was awarded to the other. We have rejected that argument. But even if we accepted that understanding of subsection (a)(2), that still wouldn't end the analysis. Subsection (a)(1) allows the court to divide the property "in kind." By "in kind," we simply mean "[i]n goods or services rather than money." Black's Law Dictionary 940 (11th ed. 2019). And a "distribution in kind," is "[a] transfer of property in its original state, such as a distribution of land instead of the proceeds of its sale." Black's Law Dictionary 597. The court is to make a "just and reasonable division of property," K.S.A. 2019 Supp. 23-2802(c)(10), whether it makes an in-kind division under subsection (a)(1) or awards property to one party and a just and proper sum to the other under subsection (a)(2).

Gary's complaint is about the award of the house and truck, which the trial court was free to award "in kind" to one of the parties. And based on the same analysis of the equities we already provided, we could also uphold the district court's ruling here as an

appropriate division in kind. The division is still just and reasonable—Cynthia needed these assets to support herself and the four children, and Gary did not.

We affirm the district court's judgment.